UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PENDLETON DIVISION

|  |  |
|---|---|
| Christopher M Pratt<br>    Plaintiff,<br>    v.<br>United States Fish and Wildlife Service<br>    Defendant. | **Complaint**<br><br>Case No. *3:19-CV-382-SB*<br>*(to be assigned by Clerk of the Court)*<br><br>Jury Trial:    ☐ Yes  ☑ No |

## I. The Parties to the Complaint

### The Plaintiff
Christopher M. Pratt
67372 Oil Well Road
Burns, Harney County, Oregon, 97720
541.589.1835

### The Defendant
United States Fish and Wildlife Service
1849 C Street NW
Washington, District of Columbia, 20240

## II. Basis for Jurisdiction

An agency of the United States Government is the defendant in this case.

## III. Statement of Claim

1. I charge that agents of the United States Fish and Wildlife Service (USFWS) exceeded their authority by interpreting the Endangered Species Act of 1973 (ESA), when said interpretation contradicts the actual wording of the ESA. In our system of rule, interpretation of the law, when needed, is the responsibility of the judicial branch and not public servants.

2. As a consequence of this action,

   • The Plaintiff has been denied the right to address environmental concerns for a valid member of the animal kingdom, as guaranteed by the laws of this land.

- A valid member of the animal kingdom has been denied a review of the long term impacts of an environment that results in the loss of genetic diversity, also guaranteed by the laws of this land.

3. There are many causes of loss of genetic diversity, but there is not one example where loss of genetic diversity has been identified as healthy for any member of the plant or animal kingdoms. This concept is supported by every decision rendered under the authority of the ESA, because every decision has used the loss of genetic diversity as a cornerstone argument. Repeatedly arguing that there is no social/economic issue that justifies causing the loss of genetic diversity in any member of the plant or animal kingdoms, and that prolonged exposure to the loss of genetic diversity, without corrective action, degrades the survival fitness to the point of failing an extinction event. These same decisions have also repeatedly argued that there are no known ways to recover lost genetics or to mitigate the damage caused by the loss of genetic diversity, and as such, require immediate corrective action.

4. Extinction/extirpation occurs when a species survival fitness is degraded due to changes in the environment (habitat fragmentation, global change, overexploitation by humans) or because of evolutionary changes in their members (genetic inbreeding, poor reproduction, decline in population numbers) that result in the loss of genetic diversity.

5. Mutagens are defined as, biological, chemical, or physical agent, process, or substance that causes permanent genetic change (mutation) in a cell (other than which occurs during normal cell growth) due to genetic alterations or loss of genes or chromosomes. Genotoxicity describes the property of agents that damage the genetic information within a cell, causing those mutations. Love Canal, Niagara Falls, NY is an example of a man made genotoxic environment, where buried genotoxic agents were released into the soils. This genotoxic environment resulted in varying forms of mutations, there is a report of one where one child was born deaf, with a cleft palate, a slight retardation, and developed an extra row of teeth.

6. While the thought of children with extra teeth is horrific, at least the individuals genetic material is still in the gene pool, and nature has the opportunity to repair the mutated genes. An environment that results in the complete removal of an individuals genetic material is far worse. There is no chance of repairing genes, no chance or combining genes through reproduction to produce a genetically improved human, and no forwarding of environmental genetic modifications, perhaps, even the loss of the genetic *"Rosetta stone"* that could end diseases that currently ravage our species. Once terminated, there are no *"time outs"*, or *"do overs"*, no chance to recover the lost genetics.

7. Currently, our Nation has regulatory mechanisms and policies that reward, fund, protect, and promote genotoxic social behavior that results in the loss of genetic diversity. It makes no difference if the environment is physical, or a social environment, any environment that results in the loss of genetic diversity is by definition a genotoxic environment. This situation creates an environmental paradox, wherein the government has endorsed genotoxic social behavior irregardless of the consequences. And by doing so, has created and perpetuates a genotoxic environment that would never be allowed on any other member of the plant or animal kingdoms.

8. On June 1st, 2016 the USFWS received a petition for action under the authority of the ESA. The petition was for the dominant member of the animal kingdom, the mammal *Homo sapiens*. The petition questioned our Nation's current standards regarding the acceptance of non-breeding social behavior and whether these standards have artificially slowed, or retarded the healthy evolution of our species. Asserting that the decisions regarding the acceptance of the behavior, and the subsequent government standards, were based on incomplete data due to a social standard that marginalizes or ignores evolutionary science out of a fear of social Darwinism. Specifically, ignoring the genetic component of our species and the long term consequences of the loss of genetic diversity on our species. The decisions have also created a form of *social* tropic cascade. Serving as the impetus for the acceptance of multiple forms of social behavior that also result in the loss of genetic diversity.

9. In an undated correspondence, (see USFWS response on page 5) the USFWS rejected the petition because they do not consider *Homo sapiens* as wildlife, and therefore ineligible for the protection of the ESA. Even making the statement in the rejection letter that they have interpreted the law, going to great lengths to cherry pick words and add emphasis to support their interpretation. I will not dispute that the architects of the ESA never intended *Homo sapiens* to be considered as wildlife, but the intent of the architects is irrelevant. What is relevant is the actual wording of the law. The priority of the wording over intent was recently demonstrated when the Affordable Care Act (ACA) was sent to the Supreme Court over a few words. The ruling by the Supreme Court was based on the actual wording and not the intent of the architects of the ACA. In this situation, the actual wording of the ESA specifically does define *Homo sapiens* as wildlife. 50 CFR Section 3. Paragraph 8 defines the term Fish or Wildlife as *any member of the animal kingdom, including without limitation any mammal, fish, bird (including any migratory, nonmigratory, or endangered bird for which protection is also afforded by treaty or other international agreement), amphibian, reptile, mollusk, crustacean, arthropod or other invertebrate, and includes any part, product, egg, or offspring thereof, or the dead body or parts thereof.* Therefore, unless the USFWS is prepared to present a new taxonomy that removes the species *Homo sapiens* from the animal kingdom class of mammal, the USFWS erred by, as well as in, their interpretation of the law.

10. If the USFWS's decision is allowed to stand there will be two conflicting environmental standards. Although calling them standards is a fraudulent concept, since two diametrically opposed choices, (loss of genetic diversity is acceptable or loss of genetic diversity is unacceptable) and the ability to use those choices to justify diametrically opposed conduct, negates the concept of a standard. In addition to the conflicting environmental standards, they represent two conflicting legal arguments that threaten future environmental issues by effectively negating the loss of genetic diversity argument. The government will be hard pressed to claim a genotoxic environment is harmful to all members of the animal kingdom, but then continue to force a genotoxic environment on our species.

11. I fully admit that my use of the ESA to force our society to address this issue is unorthodox, but none the less, is highly appropriate. The USFWS, using the authority of the ESA has been conducting research specific to the loss of genetic diversity since 1973. As a result of this research, the USFWS are arguably the worlds leading expert on the loss of genetic diversity in terrestrial species, and have demonstrated an unparalleled understanding of the impacts of the loss of

genetic diversity on all members of the animal kingdom. They also possess one of, if not the largest, databases in the world, specific to the loss of genetic diversity. This database will allow extrapolation of the potential harm based on analogous situations to other members of the animal kingdom.

## IV. Relief

12. I ask the court to direct the USFWS to follow the wording of the law, and acknowledge that *Homo sapiens*, as a member of the animal kingdom, is eligible for the protection of the ESA. And on their own authority, initiate an evaluation of the impacts of the loss of genetic diversity to the species *Homo sapiens*, using the same environmental standards afforded to all members of the animal kingdom, or to accept the Plaintiff's revised Petition for Action and begin the evaluation process using those same standards.

13. I further ask the court to direct the USFWS to not attempt any rule making, rather, return the scientific findings to the various branches of government. As well as action (if any) to mitigate the genetic damage, and recommended steps to return our species to a normal and healthy evolutionary future. These findings and recommendations would then allow the respective government branches to revisit decisions, fully informed of the consequences, and to show cause for continuation of policies and or regulatory mechanisms that create a genotoxic environment that degrades the survival fitness of our species due to the loss of genetic diversity.

## V. Certification

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case – related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  7 March, 2019

Signature of Plaintiff _____

Name of Plaintiff    Christopher M. Pratt



United States Department of the Interior

FISH AND WILDLIFE SERVICE



In Reply Refer To:
FWS/AES/DCC/ULT/063552

Chris Pratt
67372 Oil Well Road
Burns, Oregon 97720

Dear Mr. Pratt:

We have reviewed your May 24, 2016, letter, "A Petition for Action under the Authority of the Endangered Species Act of 1973 for the species *Homo sapiens*." We received your request on June 1, 2016.

Our regulations concerning petitions are at 50 CFR 424.14 *et seq.* Paragraph (a) states, "Any interested person may submit a written petition to the Secretary requesting that one of the actions described in §424.10 be taken. Such a document must clearly identify itself as a petition and be dated. It must contain the name, signature, address, telephone number, if any, and the association, institution, or business affiliation, if any, of the petitioner. The Secretary shall acknowledge in writing receipt of such a petition within 30 days." Section 424.10 states, "The Secretary may add a species to the lists or designate critical habitat, delete a species or critical habitat, change the listed status of a species, revise the boundary of an area designated as critical habitat, or adopt or modify special rules (see 50 CFR 17.40–17.48 and parts 222 and 227) applied to a threatened species only in accordance with the procedures of this part."

Your written request contains your name, signature, address, and telephone number. You state that you have no affiliations. Your letter clearly identifies itself as a petition and is dated, but your letter is not clear about its requested action with respect to §424.10. You note in your letter that you are unfamiliar with the petition process. However, on page 3, you state that the Service should "Take whatever action [we] deem appropriate. . . . If that requires 'listing,' then so be it." Thus, we conclude that your petition is requesting that we add the species *Homo sapiens* to the List of Endangered and Threatened Wildlife, per the Endangered Species Act of 1973, as amended (Act).

The species *Homo sapiens* is not eligible for listing under the Act. While, as you note in your letter, section 3 of the Act defines the term "species" as applying to "any subspecies of fish or wildlife," and the term "fish or wildlife" as "any member of the animal kingdom, including without limitation any mammal," we do not consider human beings to be wildlife. This interpretation is based on section 2(a)(3) of the Act, which states, "these species of fish, wildlife, and plants [that are in danger of or threatened with extinction and, thus, are subject to the provisions of the Act] are of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation *and its people*" (emphasis added). By recognizing wildlife as being

important to the Nation's people, the Act separates people—human beings, *Homo sapiens*—from wildlife. Thus, people are not wildlife and are not eligible for listing under the Act. This separation of people from wildlife is further emphasized in our regulations at 50 CFR 10, General Provisions. Section 10.12 states, "[f]ish or wildlife means any *wild* animal . . ." (emphasis added). Therefore, we conclude that the species *Homo sapiens* is not eligible for considerations for protections under the Act, and as a consequence we are rejecting your petition to list *Homo sapiens*.

If you have any questions concerning this matter, please contact Sarah Quamme in our Headquarters office at (703) 358-1796.

Sincerely,

*[signature]*

Gina Shultz
Deputy Assistant Director
Ecological Services
